Martin, J.
.We are to inquire as to the validity of the *557 deed, to Rogers. It was given in trust to operate as a mortgage for the benefit of the bank, and if valid is the first lien. The proceeds of the judicial sale are insufficient to pay either the bank, or the subsequent judgment lien holders; and the controversy, therefore, is one of distribution between them.
The deed is in due form, and, although the grantor is a corporation, carries with it a presumption of authority for its execution. It is prima facie valid. Cincinnati, Hamilton and Dayton Railroad Co. v. Harter, 26 Ohio St., 426. The onus of overthrowing it rests on those who assail it. It was given to secure Hudson’s individual indebtedness, present and future, to the bank; and was accepted by the bank on the representation made in the resolutions of the company’s directors that the company was indebted to him in the sum of forty thousand dollars. The only conflict in the testimony relates to the truthfulness of this representation ; and this issue is in some respects important.
If the representation was false, and especially if the arrangement was a device to incur a mere suretyship for Hudson, the company was under a personal disability, and the act is open to inquiry to such parties as have the right to avail themselves of the disability; and as to them the bank should be able to show its good faith and vigilance in accepting and relying on the security. The claim made on behalf of the judgment lien holders is, that the company had no power to give the security, because it was simply an engagement of suretyship, and because it was given by the president without authority from the board of directors.
The authorities cited in support of this position apply the doctrine of ultra vires to an act: 1st. Where it is not within the scope of corporate power under any circumstances or for any purpose. 2d., Where the corporation is not authorized to do it without the consent of interested third persons; and 3d. Where, though authorized, it is not done in the form prescribed in the charter.
Of course the act under consideration is not of the second or third class. The claim then is that the giving of this seeu *558 rity was not within the powers of the company under any circumstances. The Dock Company was a manufacturing corporation, and its objects as stated in the certificate of organization were, “for the purpose of building and working dry docks, saw and planing mills, and other machinery; of building, repairing and running steamboats, barges and flat boats, of building houses or factories, and the manufacture and sale of all kinds of furnishing goods.”
Whilst it is true that the incurring of suretyships is not one of its objects, yet the comprehensive character Of its business contemplated the incurring of large obligations, and the employment of the usual facilities and means adopted by business men in like pursuits. And whilst it is also true as a general proposition that a corporation has no power to contract a mere suretyship for a third person, unless authorized so to do by its charter, yet in determining whether a given act is tainted with such infirmity, or is otherwise ultra vires, regard is to be had to its effect, and the real object in view. Now in this case, assuming that the company was indebted to Hudson as represented, the scheme adopted simply provided a security out of its means for that indebtedness of its own, which, at the same time, and because it was such security, served to secure a debt of its president to a third person. In securing Hudson’s indebtedness to the bank, the company secured its own indebtedness to him. The security given to the bank, although the prime object with it, was regarded as incidental by the company, as shown by the controlling prominence given in the resolutions to the fact of its indebtedness to Hudson. If the company had furnished this indemnity directly to Hudson, he could have placed it as collateral and have attained the same end. We think the objection is one of form merely, plausible but not sound. In the next place it is claimed that the deed was delivered without authority, and is for that reason void. This claim assumes that the assent of the board of directors is essential; and that if it is given at a special meeting all the directors should be present or have had notice. Three only of the five direc *559 tors were present and concurred in the ratifying resolutions. The two who were absent were not personally notified ; but for what reason we are not informed. One of them, Daniel DeWolf, was present at a subsequent meeting of a quorum when the Rogers deed was ratified by a resolution providing that it should extend as a second lien for another creditor. In these transactions there were no suspicious circumstances. Hudson and the other directors supposed that the arrangement was fairly and effectually made. The responsible and active managers under the board are of necessity clothed with authority to perform usual and appropriate acts within the scope of the corporate business. It is the duty of the company to pay its debts; and it holds its means in trust for that purpose; and it may give its creditor a security for his debt. No reason is apparent to us why such acts may not be sanctioned by a quorum of the directory. But an inadvertent stipulation of record requires us to hold that the representation that Hudson was then a creditor of the company was a mistake. The testimony on the subject is conflicting. At any rate it was not the bank’s mistake. On the faith of the representation it accepted the deed and made large advances. It acted with unusual care and in good faijbh. The representation was material, and its truth or falsity was known to the company, or else it was grossly careless. Thus there is present every element of estoppel. And the doctrine applies to a trading corporation in all transactions within its corporate authority the same as to a natural person. We think this position is well supported by the authorities cited in argument. And it especially commends itself to our favor in view of the great numbers of such corporations — mere ordinary co-partnerships in fact —which, under recent legislation, have assumed a corporate form, apparently for no other reason than to obtain the statutory immunity of stockholders.
It is objected, however, that the estoppel is not available because it was not specially pleaded. The cross-petition of the bank, containing a recital of the facts, is met by a general denial and a plea of ultra vires. The alleged falsity of *560 the representation is first brought out in the testimony ; and there had been no opportunity for a special reply of estoppel. The evidence on the points out of which the estoppel arises was competent on the issues joined; and the trial court having accordingly admitted it, was bound to accept the estoppel as a conclusion of law concerning it. Bigelow on Estoppel, 584.
These views require a reversal of the judgments below.

Judgment reversed.